942 F.2d 794
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Theodore J. HOGAN, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Theodore J. HOGAN, Defendant-Appellant.
 Nos. 90-30410, 90-30413.
 United States Court of Appeals, Ninth Circuit.
 Submitted July 31, 1991*.
Decided Aug. 29, 1991.
 
 Before WRIGHT, BEEZER and WIGGINS, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Theodore Hogan, former Executive Director of the Crow Indian Tribal Housing Authority, appeals 1) from the sentence he received under the Guidelines after pleading guilty to embezzlement from an Indian Tribal Organization (18 U.S.C. § 1163) [Appeal No. 90-30410], and 2) from a jury verdict finding him guilty of conspiracy (18 U.S.C. § 371), bank fraud (18 U.S.C. § 1014), and making false statements on a bank loan application (18 U.S.C. § 1014) [Appeal No. 90-30413]. This court has jurisdiction of Hogan's timely appeals pursuant to 28 U.S.C. § 1291. In Appeal No. 90-31410, we affirm in part, and reverse and remand in part. In Appeal No. 90-30413, we affirm.
 
 DISCUSSION
 Appeal No. 90-30410
 A.
 
 3
 Hogan argues that the district court erred by giving him a two-point increase for more than minimal planning pursuant to U.S.S.G. § 2F1.1(b)(2). He asserts that the embezzlement to which he pleaded guilty was a "simple form" of the crime and that there was only one victim, the Crow Tribe. The district court's determination is a factual one, which this court reviews for clear error. United States v. McConney, 728 F.2d 1195, 1200 (9th Cir.), cert. denied, 469 U.S. 824 (1984).
 
 
 4
 Section 2F1.1(b)(2) reads: "If the offense involved (A) more than minimal planning, or (B) a scheme to defraud more than one victim, increase by 2 levels." U.S.S.G. § 2F1.1(b)(2). The Guidelines define "more than minimal planning" as "more planning than is typical for commission of the offense in a simple form ... [or taking] affirmative steps to ... conceal the offense." U.S.S.G. § 1B1.1, Application Note 1(f). When the crime is embezzlement, the Guidelines explain:
 
 
 5
 In an embezzlement, a single taking accomplished by a false book entry would constitute only minimal planning. On the other hand, creating purchase orders to, and invoices from, a dummy corporation for merchandise that was never delivered would constitute more than minimal planning, as would several instances of taking money, each accompanied by false entries.
 
 
 6
 Id.
 
 
 7
 Based on the above definitions, we find that the district court did not commit clear error by finding that Hogan's crimes involved more than minimal planning under § 2F1.1(b)(2)(A). Hogan's embezzlement, with regards to both the bank loan (count nine) and the check (count ten) required more planning than a simple "false book entry." Hogan worked in concert with other leaders of the Crow Tribe in deceiving the banks. Further, this was not a matter of money legitimately being handled by Hogan who, at a weak moment, converted it for his own benefit. On the contrary, every indication is that the conversion of the loan and the check involved detailed planning by Hogan over a significant period of time. Hogan's actions were not a "simple form" of embezzlement.
 
 B.
 
 8
 Hogan argues that the district court erred by giving him a four-point increase for being a leader of the offense pursuant to U.S.S.G. § 3B1.1(a). He contends that the court improperly considered uncharged conduct in deeming him a leader. This court reviews for clear error the factual finding that a defendant was a leader of the offense. United States v. Sanchez, 908 F.2d 1443, 1447 (9th Cir.1990).
 
 
 9
 Section 3B1.1(a) reads: "If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels." U.S.S.G. § 3B1.1(a). The Guidelines explain that in "assessing whether an organization is 'otherwise extensive,' all persons involved during the course of the entire offense are to be considered." Id., Application Note 2.
 
 
 10
 In determining that Hogan was a leader, the district court took into account Hogan's role in more than his conviction offense (embezzlement of check and loan). Hogan argues that the consideration of his role in conduct other that involved in the conviction offense is error. This is essentially a legal challenge to the district court's application of the Guidelines; this court reviews the district court's interpretation of the Guidelines de novo. United States v. Nelson, 919 F.2d 1381, 1382 (9th Cir.1990).
 
 
 11
 A recent Ninth Circuit case is dispositive of Hogan's argument. In United States v. Lillard, 929 F.2d 500 (9th Cir.1991), the court explained that collateral conduct could properly be considered for § 3B1.1 enhancements. The defendant, relying on United States v. Zweber, 913 F.2d 705 (9th Cir.1990) (holding that it is improper to consider collateral conduct in determining whether a defendant's role is minor or minimal for offense level reduction), contended that his collateral criminal conduct could not be used by the district court to define his leadership role. Lillard, 929 F.2d at 502-03. The court explained that the Zweber rule was limited to mitigating roles under U.S.S.G. § 3B1.2, and that in considering enhancement roles, collateral conduct was properly considered. Id. at 503.
 
 
 12
 Based on Lillard, Hogan's legal argument concerning the district court's application of § 3B1.1 fails, as the district court correctly interpreted and applied the Guidelines. Further, on the merits, we find that the court did not commit clear error in concluding that Hogan was a leader under § 3B1.1(a). The activities of members of the Crow Tribe in embezzling and defrauding the Tribe and certain banks were significant and planned. It was reasonable for the district court to determine that Hogan, by virtue of his role within the Tribe and the crimes, was a leader of an "extensive" criminal organization.
 
 C.
 
 13
 Hogan argues that the district court erred by denying him a two-point reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a). He contends that a defendant who asserts his innocence, but pleads guilty because he recognizes the likelihood of a guilty verdict at trial, is entitled to the acceptance reduction. This court reviews a district court's determination that a defendant is not entitled to an acceptance reduction for clear error. United States v. Gonzalez, 897 F.2d 1018, 1019 (9th Cir.1990).
 
 
 14
 Hogan's argument is meritless. Despite pleading guilty, Hogan clearly maintained his innocence before the district court. The Guidelines establish that a guilty plea alone does not entitle a defendant to an acceptance of responsibility reduction. U.S.S.G. § 3E1.1(c). Something in addition to the plea is needed, and where a defendant continues to assert his innocence, that something is lacking. The district court did not commit clear error in denying Hogan the acceptance reduction.
 
 D.
 
 15
 Hogan argues that the presentence report fails to include the victim impact statement required by Fed.R.Crim.P. 32(c)(2)(D), and that the case should therefore be remanded as a matter of law. The Government contends that the presentence report incorporated the victim impact into other sections. Regardless, the Government concedes that the amount of restitution ($45,100) was "inadequately determined." Given the Government's admission, we reverse the district court's grant of restitution and remand for recalculation. On remand, the district court should have a more detailed victim impact statement prepared pursuant to Rule 32(c)(2)(D).
 
 Appeal No. 90-30413
 A.
 
 16
 Hogan argues that the district court erred by denying his new trial motion, which was based on two grounds. First, Hogan contends that the Government's evidence at trial prejudicially varied from the indictment. Second, he contends that the district court improperly denied his discovery request, which covered documents at the BIA. This court reviews a district court's denial of a motion for a new trial for an abuse of discretion. Mateyko v. Felix, 924 F.2d 824, 828 (9th Cir.1991). For the following reasons, we find that the district court did not abuse its discretion in denying Hogan's motion.
 
 1.
 
 17
 Hogan argues that the Government's proof at trial varied prejudicially from the allegations of the indictment. A variance from the indictment occurs when the prosecution's evidence proves facts different from those alleged in the indictment. United States v. Pisello, 877 F.2d 762, 765 (9th Cir.1989) (citing United States v. Von Stoll, 726 F.2d 584, 586 (9th Cir.1984)). "A variance between indictment and proof does not require reversal unless it affects the substantial rights of the parties." United States v. Kaiser, 660 F.2d 724, 730 (9th Cir.1981), cert. denied, 455 U.S. 956 (1982); see also Von Stoll, 726 F.2d at 587.[1]
 
 
 18
 Counts four, five and six of the indictment include related charges. The indictment specifically refers to the ownership of Hogan's property as an element of the conspiracy. When Hogan acquired the loans from the banks, his property had been foreclosed. The indictment implies that Hogan misrepresented the validity of the land sale contract by claiming it was valid, when in fact the land was in foreclosure.
 
 
 19
 Hogan argues that the Government, at trial, proved only that the Crow Indians did not have enough money to purchase his land. Our review of the trial record generally supports Hogan's position. The Government's trial theory was, essentially, that the conspirators all knew that the Crow Tribe would never pay on the contract with Hogan, and that the contract only existed to facilitate the acquisition of bank loans for the conspirators' personal benefit. The Government's proof was basically limited to the fact that the Crow Tribe had no money for the purchase of land, and the resulting implication that the conspirators knew it. We find, therefore, that some variance occurred.
 
 
 20
 However, our inquiry is whether that variance affected Hogan's "substantial rights". Von Stoll, 726 F.2d at 587. We are convinced that it did not. The indictment generally put Hogan on notice that he was accused of misrepresenting the validity of the land sale contract to the banks. The indictment sufficiently informed Hogan of all necessary elements of the crimes, and the Government's trial proof was incorporated within these elements. The Government's trial proof constituted, in essence, an alternate theory, which Hogan should have been prepared to meet in light of the indictment.
 
 2.
 
 21
 Hogan argues that the district court improperly denied his request to discover documents from the BIA. Hogan asserts that the BIA documents were relevant and necessary to his defense. This court reviews a district court's discovery motion ruling for an abuse of discretion. Klingele v. Eikenberry, 849 F.2d 409, 412 (9th Cir.1988). Given the general nature of Hogan's discovery request, it is certainly not evident that granting the request would have materially aided Hogan's defense. Therefore, we find that the district court's denial was not an abuse of discretion.
 
 B.
 
 22
 Hogan argues that there was insufficient evidence for the jury to find him guilty of counts four, five, and six. The evidence is sufficient to support a conviction if any rational jury, viewing the evidence in a light most favorable to the government, could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 324 (1979); United States v. Penagos, 823 F.2d 346, 347 (9th Cir.1987). Having reviewed the complete trial record in light of the allegations contained in counts four, five, and six, we find that substantial evidence supports Hogan's convictions.
 
 C.
 
 23
 Hogan argues that the $16,000 loan with Little Horn State Bank was improperly included in the offense level and restitution calculations. He contends that, because the Bank ultimately had the loan satisfied by a set-off from Crow Tribe funds, it should not be counted in either figure. This argument is meritless. With regards to the offense level calculation, U.S.S.G. § 2F1.1(b)(1)(F) requires a five-point increase if the amount of the loss is greater than $40,000, not $50,000, as the presentence report and Hogan assert. Because the other loan, which Hogan does not contest, totaled $40,591, the five-point increase was appropriate regardless of the inclusion of the $16,000 loan. With regards to the restitution calculation, as the Government indicates, a loss occurred despite the fact that the bank recouped its money by set-off. The Crow Tribe sustained a $16,000 loss. Therefore, the restitution imposed by the district court is appropriate.
 
 CONCLUSION
 Appeal No. 90-30410
 
 24
 The sentence imposed by the district court is affirmed in part, and reversed and remanded in part. The court's planning, leader, and acceptance of responsibility determinations are affirmed. The court's imposition of restitution is reversed and remanded for recalculation.
 
 Appeal No. 90-30413
 
 25
 The judgments of the district court are affirmed. The court did not abuse its discretion in denying Hogan a new trial. Sufficient evidence supports Hogan's convictions. The court did not err in its calculation of either the offense level or amount of restitution.
 
 
 
 *
 The panel finds this case appropriate for submission without argument pursuant to Fed.R.App.P. 34(a) and 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 A variance is distinguished from a "constructive amendment" of the indictment. A constructive amendment occurs "when the charging terms of the indictment are altered, either literally or in effect, by the prosecutor or a court...." Von Stoll, 726 F.2d at 586 (quoting United States v. Cusmano, 659 F.2d 714, 718 (6th Cir.1981)). A constructive amendment requires reversal. Id.; Pisello, 877 F.2d at 765. The instant issue does not involve a constructive amendment